1
2
3
4
5
6
7
8
9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10  RANDOLPH B.Q. FRANKLIN,                     CASE NO. C11-1615-MJP-MAT

11               Plaintiff,                     ORDER DECLINING TO ADOPT
                                                REPORT AND
12       v.                                     RECOMMENDATION

13  MICHAEL J. ASTRUE,

14               Defendant.

15

16          This matter comes before the Court on Plaintiff Randolph Franklin's objections to

17  Magistrate Judge Theiler's Report and Recommendation. (Dkt. No. 23.) Having reviewed the

18  Report and Recommendation ("R&R") of United States Magistrate Judge Mary Alice Theiler

19  (Dkt. No. 23), Plaintiff's objections to that report (Dkt. No. 24), Defendant's reply (Dkt. No. 25),

20  the governing law, and the balance of the record, the Court issues the following ruling:

21          IT IS ORDERED that the Court DECLINES to adopt the Report and Recommendation,

22  REVERSES the decision of the Commissioner of the Social Security Administration, and

23  REMANDS the case to the Commissioner for reconsideration.

24

1

**Background**

2        Plaintiff Randolph Franklin seeks disability benefits stemming from degenerative disc

3   disease. Plaintiff has a long history of back problems beginning in 2002. (AR at 123-126, 144.)

4   In April 2005, Plaintiff underwent a lumbar spine microdiscectomy to relieve back pain and pain

5   radiating down his right leg as the result of an injury. (AR at 27, 142.) On April 4, 2009, Plaintiff

6   received an MRI after complaining of back pain and pain radiating down his left leg. Upon

7   reviewing the MRI, the radiologist Dr. Downs found "moderate degenerative disc disease" and

8   "moderate to severe neural foraminal narrowing" with impingement on the L3 nerve root. (AR at

9   222.) Plaintiff also received an X-ray of the lumbar spine, which showed minimal degenerative

10  facet changes. (AR at 27.) Plaintiff was "prescribed a Medrol dose pack, which he later reported

11  as beneficial in decreasing his pain." (Id.) Plaintiff now takes Neurontin to control his pain. (AR

12  at 54.)

13        On September 16, 2009, consulting physician Dr. Akaydin performed a physical

14  examination of Plaintiff. Dr. Akaydin found that there were no "overt major potentially limiting

15  deficits of any kind being readily appreciated." (AR at 375.) Dr. Akaydin stated, however, that it

16  was in Plaintiff's "best interest for him to avoid any type of employment that is overly physically

17  strenuous and demanding unless given the appropriate approval/clearance by his current

18  physicians to do so at least as a simple precautionary measure." (AR at 376.) Dr. Akaydin did not

19  review Plaintiff's MRI records.

20        On September 30, 2009, state agency physicians noted Plaintiff had "minimal facet

21  degeneration" and recommended a finding of a non-severe impairment. (AR at 379-80.)

22  However, it is unclear based on the record of the visit whether state physicians reviewed

23  Plaintiff's MRI. (Id.)

24

1    At the ALJ hearing Plaintiff testified that any type of bending causes his back to hurt and

2  that he can't turn easily or move his neck freely. (AR at 59.) He rates his pain as a six out of ten

3  without medication and five out of ten with medication. (AR at 58.) His pain is constant, located

4  in the center of his lower back and radiates down his left leg. (AR at 143.)

5    Plaintiff previously worked as a truck unloader, general laborer and food service worker.

6  (AR at 28.) On July 9, 2008 Plaintiff began working in exchange for board and room at the

7  Wayside Christian Mission unloading trucks in the warehouse, but was transferred to a security

8  post due to back pain. (AR at 46.) He then worked on a part time basis doing light janitorial

9  work, but avoided heavy jobs due to back pain. (AR at 49.) In March 2009, Plaintiff's primary

10 care provider placed lifting restrictions on him for one month. (AR at 299.) Plaintiff was then

11 prescribed a back brace, which he wears all day. (AR at 27, 57.) He reported to state physicians

12 that he "cannot lift heavy objects" and that his "knees also swell up because of my condition."

13 (AR at 379.)

14                                   **Standard of Review**

15    Reviewing the Commissioner's decision, the Court asks whether the decision is in

16 accordance with the law and supported by substantial evidence on the record as a whole. Thomas

17 v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). Substantial evidence is more than a scintilla, but

18 less than a preponderance. (Id.) It is what a reasonable person would accept as adequate to

19 support a conclusion. (Id.) If the evidence has a rational interpretation that supports the

20 Commissioner's decision, the Court must uphold the decision. (Id.)

21                                       **Discussion**

22    The Court finds the Appeals Council and R&R erred in denying Plaintiff's claim at step

23 two. First, Plaintiff has a medically determinable impairment. Second, that impairment

24

1   significantly impacts his ability to work. Third, the decisions below failed to consider the Webb

2   standard, which requires that the disability analysis continue beyond step two if the medical

3   evidence is not clearly dispositive of a non-severe impairment.

4       I.    Step Two Standard

5         At step two of the disability analysis, the ALJ must determine whether the claimant has

6   a.) medically determinable impairments that b.) significantly limit his ability to perform basic

7   work activities. 20 C.F.R §§ 404.1520(c). The step two standard for finding a severe impairment

8   is extremely low, it is a "de minimis" standard only meant to "dispose of groundless claims."

9   Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996). An ALJ may find an impairment "is not

10  severe if it is merely 'a slight abnormality…that has no more than a minimal effect on the ability

11  to do basic work activities.'" Webb v. Barnhart, 433 F.3d 683, 686 (9th Cir. 2005) (citing S.S.R.

12  No. 96-3 (1996)). At step two, the burden of proof is on the claimant. Tackett v. Apfel, 180 F.3d

13  1094, 1098 (9th Cir. 1999).

14      A. Medically Determinable Impairment

15        The Court finds that Plaintiff has a medically determinable impairment. A medically

16  determinable impairment must be demonstrated by objective medical evidence. See Ukolov v.

17  Barnhart, 420 F.3d 1002, 1006 (9th Cir. 2005). Diagnostic testing such as an MRI is considered

18  objective medical evidence to show an underlying impairment. Id. Plaintiff's MRI is clear

19  evidence of an impairment. In contrast, the claimant in Ukolov could present no objective

20  medical evidence of an impairment. Id. at 1005. The Appeals Council even stated, "[t]he

21  claimant has a medically determined condition, which could reasonably be expected to produce

22  the symptoms alleged." (AR at 5.) Although there is dispute as to the extent of the degeneration

23

24

ORDER DECLINING TO ADOPT REPORT AND
RECOMMENDATION- 4

1  of Plaintiff's spine, the basic existence of a medically determinable impairment is clear based on

2  the record.

3         B. Significant Limitation on Ability to Work

4         The Court finds that based on the current record, Plaintiff's ability to work is

5  "significantly" limited by his impairment. Plaintiff must show that his impairment has more than

6  a "minimal effect on the ability to do basic work activities." Webb, 433 F.3d at 686. Ability to do

7  "basic work activities" is defined as the "abilities and aptitudes necessary to do most jobs." 20

8  C.F.R §§ 404.1521(b). The activities include "physical functions such as walking, sitting, lifting,

9  pushing, pulling, reaching, carrying or handling." Id.

10        Here, Plaintiff has met this burden by showing that his ability to do basic physical work

11 is more than minimally limited by his impairment. Plaintiff has testified that he can only stand

12 for five minutes and sit for forty-five minutes. (AR at 64-5.) This is corroborated by his inability

13 to work more than part-time doing light janitorial work despite an apparent desire to do so. He

14 has consistently alleged inability to pick up heavy objects, which is corroborated by his transfer

15 at Wayside Christian Mission out of the warehouse due to back pain from unloading trailers. (AR

16 at 46.) His descriptions of his pain and its limiting effects are consistent with his history of back

17 surgery, diagnosis of disc degeneration, use of pain medication and use of a back brace.

18        C. Webb Standard: Ambiguity Requires Analysis Continue

19        Plaintiff's impairment cannot be deemed non-severe because the medical evidence does

20 not clearly establish non-severity. If there is doubt as to the existence of a severe impairment,

21 either because the impairment was medically indeterminable or not significant, the disability

22 analysis ought to continue because the severity is too unclear to decide the claim at the low

23 threshold of step two. To find non-severity, "the ALJ must have substantial evidence to find that

24

1  the medical evidence clearly established that [the claimant] did not have a medically severe

2  impairment." <u>Webb</u>, 433 F.3d at 687. <u>Webb</u> also held that, "if an adjudicator is unable to

3  determine clearly the effect of an impairment or combination of impairments on the individual's

4  ability to do basic work activities, the sequential evaluation should not end with [step two]." <u>Id.</u>

5  at 686-87.

6          The Court finds that the medical evidence failed to clearly establish Plaintiff did not have

7  a severe impairment. While the Appeals Council relies on Dr. Akaydin's report finding minimal

8  physical limitations, state agency physicians found Dr. Akaydin's report was inconsistent with

9  the medical record and gave it little weight in their findings. (AR at 379.) That contradiction also

10 begs the question why state agency physicians found a non-severe impairment. Dr. Akaydin's

11 report is further undermined by his failure to consider Plaintiff's MRI records. Lastly, there are

12 differing interpretations by Dr. Downs and the state agency physicians regarding the severity of

13 Plaintiff's spinal impairment. The medical record, conflicting interpretations of that record and

14 the case law all show that Plaintiff's claim is at least debatable, that there is not substantial

15 evidence demonstrating non-severity and that it should thus proceed beyond step two.

16 \\

17 \\

18 \\

19 \\

20 \\

21 \\

22 \\

23 \\

24

1
**Conclusion**

2      The medical evidence is convoluted in this case and does not clearly establish non-

3  severity. The Commissioner erred in its application of the step two standard to this case. Thus

4  Plaintiff's request for a new medical examination, medical testimony to clarify the record and a

5  rehearing is warranted. This does not imply that Plaintiff's claim will survive review. However,

6  Plaintiff's claim is not groundless. Therefore, the Court DECLINES to adopt the Report and

7  Recommendation, REVERSES the Commissioner's decision and REMANDS the case for

8  reconsideration.

9      The clerk is ordered to provide copies of this order to all counsel.

10     Dated this 25th day of July, 2012.

11

12

13

Marsha J. Pechman
14                                United States District Judge

15

16

17

18

19

20

21

22

23

24

ORDER DECLINING TO ADOPT REPORT AND
RECOMMENDATION- 7